## PETER O. HANSON v. OLE HANSON KALSTARUD.[1]

June 2, 1911.

Nos. 17,138—(154).

**Guardian of incompetent — evidence.**

This is a proceeding to secure the appointment of a guardian for the person and estate of the respondent on the ground of his mental incompetency. The finding of the trial court that he was not incompetent is sustained by the evidence.

Appeal by Peter O. Hanson from an order of the district court for Yellow Medicine county, Powers, J., affirming the order of the pro-

[1]Reported in 131 N. W. 477.

bate court for that county refusing to appoint a guardian for Ole Hanson Kalstarud. Affirmed.

*Mathews & Lende,* for appellant.

*Virgil B. Seward,* for respondent.

START, C. J.

The appellant is the son of the respondent, and on April 17, 1909, he filed a petition in the probate court of the county of Yellow Medicine for the appointment of a guardian of the person and property of the respondent, who was then eighty-four years old, on the ground that he was mentally incompetent to have the management of his property. Upon a hearing of the petition, the probate court found that the evidence did not warrant a finding that the respondent was mentally incompetent to a degree to justify placing him under guardianship, and made its order denying the prayer of the petition. The appellant appealed from the order to the district court. The case was tried in the district court without a jury, and findings of fact made to the effect that the respondent had no property, except his wearing apparel; that he was not incompetent to have the management of his property; that since February 4, 1909, he has resided with his son, Charley O. Hanson, in the town of Normania, Yellow Medicine county, where he is well treated and cared for by him and his wife, and where he wishes to stay, under a contract between him and this son for such care and treatment and for his suitable support during his natural life; and, further, that there is no necessity for the appointment of a guardian of either the person or estate of the respondent. As a conclusion of law, judgment was directed to be entered affirming the order of the probate court. The appellant appealed from an order denying his motion for a new trial.

The assignments of error, as amended, raise the question as to the sufficiency of the evidence to support the several findings of fact. The finding as to the competency of the respondent is the vital one, for if it is sustained by the evidence the conclusion of law is correct. The finding of the collateral fact that the respondent has no property, except his wearing apparel, is closely connected with and depends upon the question of respondent's competentcy.

The evidence as to the respondent's property was in some respects conflicting; but there was evidence tending to show that he inherited from his deceased son, Martinus, a farm in La Crosse county, Wisconsin, of the value of $7,000, and the personal property thereon, of the value of some $3,000; that his son C. O. Hanson was appointed administrator of the estate of Martinus by the probate court of La Crosse county; that the administrator, who lived in Yellow Medicine county, this state, at the request and by the authority of the respondent brought to his farm in this state some $500 of the personal property belonging to the estate of Martinus, and that he accounted to the probate court in Wisconsin for all of the personal property belonging to the estate, which was insufficient to pay the expenses of administration and the debts of the deceased; that on May 3, 1909, the respondent conveyed the farm to his son C. O. Hanson in consideration of one dollar and the son's agreement to care for and support the respondent, who was then eighty-five years old, during his life, and upon his death pay to his daughter $250 and to each of his two grand-children $125; and, further, that at the time of the trial the respondent was living with his son pursuant to such contract.

It follows that, at the time this proceeding was commenced, the respondent had no property within this state, and that, if he was mentally competent to dispose of his farm, the finding of the trial court as to his property is sustained by the evidence. If he was competent, the question whether his contract with his son C. O. Hanson was, as to his other children, an equitable disposition of his farm, is not here material; for, if he was competent, he might do as he pleased with his own property.

This brings us to the pivotal question in the case, namely: Is the finding that the respondent was not mentally incompetent sustained by the evidence? The evidence relevant to his mental competency, other than his own testimony, was radically conflicting. He was called by the petitioner for cross-examination, and was subjected to an astute and searching examination for some two days. His testimony shows that he was unable to state the value of the farm and personal property which he inherited from his son Martinus, or Mar-

tin, as he is frequently referred to in the record, and that he was indifferent as to the value, but that it was his desire and fixed purpose that his son C. O. Hanson, sometimes referred to in the record as Charley, should have his property if he took care of him as long as he lived and paid his daughter and grandchildren the sums named. It is undisputed that the farm originally belonged to respondent, and that he deeded it to his son Martinus in consideration of his agreement to support him during life, and upon his death to pay each of his daughters $250. His evidence tends to show that his eyesight is poor and that he could not recognize his attorney in the court room six feet away. He is a native of Norway and reads its language, but cannot speak English. He was examined through an interpreter, and considering this, his age, and the manner and length of his examination, it indicates a good deal of mental vigor.

For example, he testified as follows: "Q. You proposed to give Charley that deed, after Charley told you that it was best for you to do that, didn't you? A. Oh; I said that myself that he should have the deed to the land. Q. Did Charley tell you that he thought it was best that you give him a deed to that land? A. No; that he didn't say anything about. I settled upon that myself. Q. You were anxious to provide a home for yourself the rest of your life, when you gave that deed to Charley, were you not? A. Yes; yes. Q. You did not take so much interest in anybody else but yourself at that time, did you? A. No. * * * Q. You don't know anything about that, except what Charley has told you, do you? A. Oh; it was fixed by testament, long before Martin died, that Hannah should have $250, Julianna should have $250, and then, when Hannah died, there was to be $125 to each of the children, one boy and one girl. Q. When you gave this deed to Charley for a dollar, you don't know anything about that arrangement, except what Charley has told you, do you? A. No; it was arranged by testament that was written many, many, years ago. Pete [the petitioner] has got what he was to have, and then Julianna was to have that money, and Hannah was to have that money, and that was all arranged for a long time ago. Q. And that is what Charley told you at the time you signed the deed, is it? A. Yes."

Other portions of his testimony indicate, in a greater or less degree, mental incompetency. The learned trial judge, who saw, heard, and studied the respondent during his cross-examination, had an opportunity to determine the question of his mental competency, superior to that afforded by a mere reading of the record. The question here to be determined is, not whether the trial court might have found from the evidence that respondent was incompetent, but whether there was any evidence fairly tending to support the finding as made. A careful consideration of the evidence has led us to the conclusion that the findings of the trial court are reasonably sustained by the evidence, within the rule applicable to verdicts of juries and findings of fact by trial judges.

Order affirmed.